JET / JBW / BML: August 2019

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) |
| | ) |
| SHARON D. WALTZ | ) |

## INFORMATION

The United States Attorney charges:

## Introduction

At all times material to this information:

### Relevant Individuals and Entities

1. Defendant **SHARON D. WALTZ** was a psychologist who owned and operated a mental health counseling practice in Birmingham, Alabama.

2. In or about 2008, defendant **SHARON D. WALTZ** formed Capstone Medical Resources, LLC ("Capstone"). Defendant **SHARON D. WALTZ** was the sole owner of Capstone. Defendant **SHARON D. WALTZ** provided mental health counseling services through Capstone. Capstone was originally a single-office counseling practice in Birmingham, Alabama, but it ultimately expanded to include multiple satellite locations throughout Alabama.

3. Conspirator 1 began working with defendant **SHARON D. WALTZ** in some capacity in or about 2016. In or about the fall of 2016, Conspirator 1 began working at Capstone full-time. Conspirator 1 worked at Capstone until in or about October 2017. During that period, Conspirator 1 served as Capstone's primary insurance biller. Conspirator 1 reported to and was supervised by defendant **SHARON D. WALTZ**.

4. Conspirator 2 worked at Capstone from in or about May 2016 to in or about October 2017. During that period, Conspirator 2 served as a receptionist and, later, as office manager. Conspirator 2 assisted with billing responsibilities, under the supervision of Conspirator 1 and defendant **SHARON D. WALTZ**, until her departure in or about October 2017.

5. Company 1 was a counseling practice based in Birmingham, Alabama. From early 2016 to late 2017, Capstone contracted with Company 1 for Company 1 counselors to provide counseling and therapy services to Capstone's clients. Defendant **SHARON D. WALTZ** served as the supervising psychologist. Company 1 counselors completed service records detailing each therapy session provided by Company 1 pursuant to the relationship with Capstone, and submitted those service records to Capstone. Capstone in turn paid Company 1 a flat rate per counseling session performed. Capstone was responsible for billing Medicaid for these services.

## The Alabama Medicaid Program

6.      The Medicaid Program (Medicaid) is a joint federal and state health insurance program administered by individual states in coordination with the Centers for Medicare and Medicaid Services, a part of the United States Department of Health and Human Services.  Medicaid provides free and below-cost insurance to low-income individuals and families.  These individuals are known as Medicaid "beneficiaries."

7.      Alabama Medicaid is administered by the Alabama Medicaid Agency. More than half the funding for Alabama Medicaid comes from the federal government; the remainder comes from the state of Alabama.

8.      Alabama Medicaid is a "health care benefit program" as that term is defined by Title 18, United States Code, Section 24(b), and used in Title 18, United States Code, Section 1347.

9.      To be eligible to receive Medicaid payments for the provision of services to Medicaid beneficiaries in Alabama, a provider must enroll in Alabama Medicaid.  To enroll in Alabama Medicaid, a provider must meet specific requirements.  Those requirements include the provider's agreement to adhere to all relevant regulations of Alabama Medicaid, or those of the third-party intermediaries through which claim payments may be received, adjudicated, and paid.  Among

these regulations are requirements that providers may only submit claims for services that are reasonable and medically necessary.

10. To receive payment for covered services, Alabama Medicaid providers must submit claims to Alabama Medicaid. Each claim must include the provider's National Provider Identifier (NPI), a standard unique health identifier for health care providers to use in providing health care services. Each claim also must include the correct Current Procedural Terminology (CPT) or other code that accurately describes the service provided.

11. Among the health care benefits, items, and services covered by Alabama Medicaid are mental health services provided through licensed psychologists. These covered services include intake evaluation, neurobehavioral status examinations, individual counseling, and family counseling.

12. According to the Alabama Medicaid Provider Billing Manual (Medicaid Manual), intake evaluation services are initial clinical evaluations of the recipient's request for assistance. Intake evaluation includes a clinical interview with the recipient and/or his or her family member, guardian, or significant other; screening for needed evaluations; a brief mental status evaluation; a review of the presenting problems, symptoms, functional deficits, and history; development of an initial treatment plan; and referral to other medical, professional, or community services as indicated.

13. According to the Medicaid Manual, neurobehavioral status examinations involve a clinical assessment of a recipient's thinking, reasoning, and judgment, to evaluate the recipient's neurocognitive abilities. Such examinations must include screening for impairments in acquired knowledge, attention, language, learning, memory, problem solving, and visual-spatial abilities. Each examination must be medically necessary in order to receive Medicaid coverage. Nonspecific behaviors that do not indicate the presence of, or change in, a mental illness would not be an acceptable indication for testing. Moreover, testing might not be medically necessary if any necessary psychological evaluation could be accomplished through a clinical interview alone. Neurobehavioral status examinations receive the CPT code 96116.

14. According to the Medicaid Manual, individual counseling services are services rendered to a recipient in a face-to-face, one-to-one psychotherapeutic encounter in order to achieve specific objectives of treatment or care for a mental health or substance abuse disorder. The CPT code to be used for such services depends on the length of the therapy. Therapy for 16 to 37 minutes receives the code 90832; therapy for 38 to 52 minutes receives the code 90834; and therapy given for 53 minutes or more receives the code 90837.

15. According to the Medicaid Manual, family counseling services are face-to-face counseling services that may include the recipient and his or her family

5

member, guardian, or significant other. Family counseling services that occur with the patient present receive the CPT code 90847. Providers are not permitted to submit separate claims for each eligible person attending the same family therapy session; a session is billed as one service (that is, a service for one family unit), regardless of the number of individuals present at the session.

16. Where both individual counseling and family counseling services are provided on the same day, Alabama Medicaid requires that claims include a CPT modifier code indicating that the services were distinct or independent from other services performed on the same day. The CPT modifier 59 is used to identify services that are not normally reported together, but are appropriate under the circumstances, such as two different sessions or patient encounters on the same day. The modifier indicates that two services, although provided the same day, are separate and distinct without overlap in services. A psychologist who uses the modifier should be prepared to submit documentation to support its use.

17. Alabama Medicaid conducts audits to detect possible inaccuracies and fraud in claims submitted through the program. An unusually frequent use of the CPT modifier 59 could raise a red flag in the course of an audit, and prompt further investigation as to whether both individual and family counseling services were each provided to a recipient on the same day.

## Capstone's Claims to Alabama Medicaid

18. Starting in or about 2011, defendant **SHARON D. WALTZ** was enrolled in Alabama Medicaid with the NPI number 1295025997.

19. Defendant **SHARON D. WALTZ** submitted claims to Alabama Medicaid through Capstone.

20. Until about May 2018, Capstone submitted claims to Alabama Medicaid using the NPI number 1295025997, associated with "Sharon D. Waltz."

21. In or about November 2017, Capstone applied for and received a separate NPI number, 1104364074, associated with the name "Capstone Medical Resources, LLC." Beginning in or about April 2018, Capstone submitted claims to Alabama Medicaid using this second NPI number.

22. Between 2015 and 2018, Capstone's reimbursements from Alabama Medicaid soared. In 2015, Capstone received less than $100,000 in reimbursements from Alabama Medicaid. In 2016, Capstone received more than $660,000 in reimbursements from Alabama Medicaid. In 2017, Capstone received more than $2.2 million in reimbursements from Alabama Medicaid. Between January and October 2018, Capstone received nearly $1.5 million in reimbursements from Alabama Medicaid.

23. Between January 2016 and October 2018, Alabama Medicaid reimbursed Capstone for more than $3.5 million in claims associated with the NPI

number 1295025997.  These claims reflected a consistent pattern of billing two CPT codes—90837 and 90847—for patients on consecutive service dates.  CPT code 90837, as noted above, is used for individual counseling services of 53 minutes or greater.  CPT code 90847 is used for family counseling services.  Between 2016 and October 2018, Capstone submitted and was reimbursed for more than 14,000 claims for individual counseling services with the CPT code 90837, and more than 14,000 claims for family counseling services with the CPT code 90847.

24.     Between April 2018 and October 2018, Medicaid reimbursed Capstone for more than $680,000 in claims associated with the NPI number 1104364074.  As with claims submitted under the NPI number 1295025997, these claims reflected a consistent pattern of billing for both individual therapy services and family therapy services for certain Medicaid recipients—although these claims purported to be for services rendered on the same day, and used the CPT modifier 59.  In many cases, these claims also included a third procedure code, CPT code 96116, representing a neurobehavioral status examination.

## Count One
## Health Care Fraud Conspiracy
## Title 18, United States Code, Section 1349

25.     The factual allegations of paragraphs 1 through 24 of this indictment are re-alleged as though fully set forth herein.

26. Beginning at least in or about 2016 and continuing until in or about at least October 2018, the exact dates being unknown, in Jefferson County within the Northern District of Alabama and elsewhere, defendant

**SHARON D. WALTZ**

knowingly and willfully conspired, combined, and agreed with others known and unknown to the grand jury to execute and attempt to execute a scheme and artifice to defraud a health care benefit program affecting commerce, as defined in Title 18, United States Code, Section 24(b), that is, Alabama Medicaid, and to obtain, by means of materially false and fraudulent pretenses, representations, and promises, money and property owned by, and under the custody and control of that health care benefit program, in connection with the delivery and payment for health care benefits, items and services, in violation of Title 18, United States Code, Section 1347.

## Purpose of the Conspiracy

27. It was a purpose of the conspiracy for defendant **SHARON D. WALTZ**, Conspirator 1, Conspirator 2, and others to unlawfully enrich themselves, Capstone, and others by submitting, and causing to be submitted, claims to Alabama Medicaid based on materially false and fraudulent pretenses, representations, and promises, and by concealing from Medicaid the nature and scope of their fraud.

## Manner and Means of the Conspiracy

28. It was a part of the conspiracy that defendant **SHARON D. WALTZ** caused Capstone to submit claims to Alabama Medicaid for counseling services that were not rendered.

29. It was a part of the conspiracy that Capstone employees, acting under the supervision and with the knowledge of defendant **SHARON D. WALTZ**, created fraudulent service records to support claims submitted to Alabama Medicaid, including purported dates and times of service, procedure codes representing services purportedly but not actually performed, and purported signatures of patients or guardians.

30. It was a part of the conspiracy that Capstone employees, acting under the supervision of defendant **SHARON D. WALTZ**, submitted claims to Alabama Medicaid for services purportedly performed by Company 1 that Company 1 did not perform. Defendant **SHARON D. WALTZ** knew or should have known about the submission of these claims.

31. It was a part of the conspiracy that Capstone employees, acting under the supervision of defendant **SHARON D. WALTZ**, submitted claims to Alabama Medicaid for intake evaluation services purportedly performed by defendant **SHARON D. WALTZ** that defendant **SHARON D. WALTZ** did not provide.

32. It was a part of the conspiracy that Capstone employees, acting under

the supervision of defendant **SHARON D. WALTZ**, submitted claims to Alabama Medicaid for neurobehavioral status examinations that were not in fact provided.

33.    It was a part of the conspiracy that Conspirator 1 and Conspirator 2, acting under the supervision of defendant **SHARON D. WALTZ**, submitted claims to Alabama Medicaid for individual counseling services (using CPT code 90837) and family counseling services (using CPT code 90847) that were not in fact provided.  Defendant **SHARON D. WALTZ** knew about some of these claims and should have known about others.

34.    It was a part of the conspiracy that defendant **SHARON D. WALTZ** directed Conspirator 1 and Conspirator 2 to submit, and that Conspirator 1 and Conspirator 2 did submit, claims to Alabama Medicaid for individual counseling services (using CPT code 90837) and family counseling services (using CPT code 90847) on consecutive dates, which made it more difficult for Medicaid to detect fraud in the submission of these claims.

35.    It was a part of the conspiracy that Conspirator 1 and Conspirator 2 obtained Medicaid insurance information for individuals not receiving services from Capstone, and that defendant **SHARON D. WALTZ** knew or should have known that they had done so.

36.    It was a part of the conspiracy that Conspirator 1 and Conspirator 2 obtained Medicaid insurance information from various acquaintances and relatives.

37. It was a part of the conspiracy that defendant **SHARON D. WALTZ** gave bonuses or other things of value to Conspirator 1 and Conspirator 2 above and beyond their salaries.

38. It was a part of the conspiracy that Conspirator 1 and Conspirator 2 caused Capstone to submit claims to Alabama Medicaid for services purportedly but not in fact provided to relatives and acquaintances whose Medicaid insurance information they had obtained.

39. It was a part of the conspiracy that, at the direction of defendant **SHARON D. WALTZ**, Capstone employees contacted Medicaid recipients by telephone, purportedly for the purpose of conducting patient surveys, gathering information about patient status, and scheduling patients for Capstone counseling services.

40. It was a part of the conspiracy that, at the direction of defendant **SHARON D. WALTZ**, Capstone employees recorded these telephonic contacts—including unanswered calls where Capstone employees left voicemail messages—and provided the information to Conspirator 1 and Conspirator 2.

41. It was a part of the conspiracy that Conspirator 1 and Conspirator 2 caused Capstone to submit claims to Alabama Medicaid for telephonic contacts described in paragraph 40, for services that were not in fact performed.

42. It was a part of the conspiracy that defendant **SHARON D. WALTZ**

directed Capstone employees to use multiple CPT procedure codes—including 90837 (for individual counseling), 90847 (for family counseling), and 96116 (for neurobehavioral status examinations)—for certain patient therapy sessions, regardless of the services or the number of hours of service provided.

43. It was a part of the conspiracy that defendant **SHARON D. WALTZ** paid Conspirator 1 to serve as Capstone's primary insurance biller, and to perpetuate the fraud.

44. It was a part of the conspiracy that defendant **SHARON D. WALTZ** directed Conspirator 1 to establish a separate entity to perform billing services for Capstone, and to receive compensation for those services based on a percentage of total Capstone billings.

45. It was a part of the conspiracy that Conspirator 1 established a separate entity, Outsourced Billing Associates, LLC, to perform billing services for Capstone, and to receive compensation for those services based on a percentage of total Capstone billings.

46. It was a part of the conspiracy that, between February 2017 and September 2017, Capstone paid Outsourced Billing Associates, LLC, more than $170,000 in compensation for billing services based on a percentage of total Capstone billings.

All in violation of Title 18, United States Code, Section 1349.

JAY E. TOWN
United States Attorney


*/s/ Electronic signature*
JOHN B. WARD
Assistant United States Attorney

*/s/ Electronic signature*
BRUCE M. LIEBERMAN
Special Assistant United States Attorney